UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RANDY  BARROWS, d/b/a Radcat Enterprises, LLC, FORREST BROWN, d/b/a Freedom Trucking, LLC and GARY SEXTON, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-00357-SEB-TAB |
| | ) | |
| TEAMSTERS JOINT LOCAL 69, COAL, ICE, BUILDING MATERIAL, SUPPLY DRIVERS, RIGGERS, HEAVY HAULERS, WAREHOUSEMEN & HELPERS LOCAL UNION NO. 716 and JAMES  CAHILL, | ) ) ) ) ) ) ) | |
| | ) ) | |
| Defendants. | | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**
(Docket No. 93)

*I. Facts As Alleged In Plaintiffs' Second Amended Complaint*[1]

Plaintiffs Randy Barrows, Gary Sexton and Forrest Brown each owns and operates his own dump truck.  Prior to April 1, 2010, Plaintiffs were retained on jobs as needed by contractors or subcontractors relating to highway construction.  Their services and equipment were engaged to supplement the contractors' own trucks and to haul loads to and from various union construction sites.  Because these independent drivers are

---

[1]When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[w]e consider documents attached to the complaint as part of the complaint itself." *Reger Development, LLC v. National City Bank,* 592 F.3d 759, 764 (7th Cir. 2010).

responsible for the fuel, maintenance, repair, insurance and taxes on their trucks, Plaintiffs were treated in all respects as independent contractors by the contractors who retained them (sometimes as broker/leasors), but were paid in accordance with the union wage scale.  Plaintiffs were required to pay a one-time fee of approximately $250 to purchase a union membership with Defendant, Coal, Ice, Building Material, Supply Drivers, Riggers, Heavy Haulers, Warehousemen & Helpers Local Union No. 716 ("Local 716"), after which they paid monthly union dues.  However, prior to April 1, 2010, they were never required to remit to the union any payment to cover fringe benefits nor have they ever been participants in the union's pension or benefits trusts.

Local 716 and Defendant Teamsters Joint Council No. 69 ("Joint Council") are labor organizations and parties to a multi-employer collective bargaining agreement ("CBA") with a highway contractors association known as the Highway, Heavy and Utility Division – ICA, Inc. ("HHUD").[2]  Defendant James Cahill is the president of Local 716.  The CBA sets forth the negotiated terms of employment for members of Local 716 when working for contractors belonging to HHUD, covering such requirements as the hourly wage scale and the amount of fringe benefit payments to be paid by signatory contractors to the Indiana Teamsters Health Benefits Fund and Teamsters Pension Fund for each union employee.

_____

[2]The Joint Council represents several different Teamster affiliated locals in negotiations with HHUD covering work performed in the state of Indiana (except the counties of Lake and Porter).

A number of provisions contained in the CBA are central to this dispute.  First, the
definition of "Employee" is contained in Article 25:

> Section 1. Any owner-driver operating or driving his own vehicle and/or
> driver operating such vehicle, hauling directly for or leased directly to the
> Employer shall be considered an employee of the Employer under this
> Agreement and shall be included within the terms and conditions of this
> Agreement.

The definition of employee dovetails with language in Article 1 of the CBA setting forth
the details of union recognition:

> Section 4. So there will be no misunderstanding in the coverage and
> administration of this Agreement, any person who draws wages from the
> Employer for work covered by this Agreement, or any owner-driver
> operating or driving his own vehicle, and/or the driver operating such
> vehicle, hauling directly for, or leased directly to the Employer, shall be
> considered to be an employee of the Employer.

Article 13 of the CBA, which  is entitled "OWNERS - DRIVERS -
EMPLOYEES," provides greater detail with regard to the negotiated terms applicable to
owner/operators, such as Plaintiffs, when retained by signatory contractors.  In pertinent
part, it provides:

> Section 1.  Any owner-driver operating or driving his own vehicle and/or
> driver operating such vehicle, hauling directly for or leased directly to the
> Employer shall be considered an employee of the Employer under this
> Agreement and shall be included within the terms and conditions of this
> Agreement.  Separate checks shall be issued by the Employer (a) for the
> equipment services and (b) for the driver's wages.  No deduction shall be
> made from the equipment service check to compensate a driver for any
> other monetary provisions contained in theis Agreement.  Wage checks of
> an owner-driver and of the driver operating the equipment of an owner-
> driver shall be itemized.

Section 2.  The minimum service rate per hour for equipment shall be as follows: .....[chart setting forth detailed hourly rates for various types of trucks]

Section 3. It is further agreed that the intent of this clause and this entire Agreement is to assure the payment of the Union scale of wages as provided in this Agreement, and to prohibit the making and carrying out of any plan, scheme, or device to circumvent or defeat the payment of wage scales provided in this Agreement.

Payment of fringe benefits, such as contributions to the appropriate Teamster's pension and health and welfare funds, is covered by the CBA as well.  In Article 23, the amount of contributions to the pension fund for each employee, to be made by the employing contractor, is set forth for each year the CBA is in effect (April 2008 through March 2014).  The annual rates for contributions are set forth in the CBA and, with the exception of one particular regional pension fund, contractors who pay into the trust are allowed to choose whether they wish to pay either the weekly or hourly rate.  For example, for the current fiscal year, pension contributions are to be paid "at the rate of One Hundred Twenty-Four Dollars and Eighty Cents ($124.80) per week or Three Dollars and Ninety Cents ($3.90) per hour."

Similarly, the amount of the contributions to be made to the appropriate health benefit funds for each employee is covered in Article 22 of the CBA.  Hourly and weekly amounts for the contributions are set forth and the contractor is given the option of choosing either schedule.  However, unlike the pension contribution provisions, the

designation of specific amounts for contributions stops as of the end of March 2010.

After that point, Section 3 of that Article applies and states:

> Section 3.  Effective April 1, 2010, April 1, 2011, April 1, 2012 and April 1, 2013, the amount necessary to maintain the insurance will be allocated out of wages as provided in Article 9 - Wages.

The timing of the contributions is set forth in the CBA as well:

> Section 9.  Contributions to the Health and Welfare Fund must be computed weekly and paid each four (4) or five (5) week period as designated in report and remittance forms for the Health and Welfare Fund, on each regular, part-time or extra employee, even though such regular, part-time or extra employee may work only part-time including weeks where no work is performed unless such regular, part-time or extra employee is laid off and given separation papers. ....

On or about March 30, 2010, James Cahill circulated to contractors and job sites a written "Notice" on Local 716 letterhead which stated:

**NOTICE**!

To All dump Truck Operators

   In keeping with our continuing effort to level the playing field for all dump truck operators in Teamsters Local 716 areas,  Local 716 is implementing and will be **<u>VIGORUSLY</u>** [sic] enforcing these new procedures effective <u>immediately</u>.
   All dump truckers will be required to sign a contact [sic] with Local 716.  NO EXCEPTIONS!  You will no longer be able to just purchase a dues receipt.  When you become signatory you will be responsible to pay Pension and Health and Welfare on all drivers.  When all operators incur the same cost they will be no longer able to offer the cheap haul rates that currently exist, thereby allowing the truckers that do pay their fringes to bid competitively on the jobs.
   If you choose to use owner-operator or lease (broker) trucks according to the Article XXXIII of the Dump Truckers Agreement and Article 25 of the Heavy Highway Agreement these trucks become your

-5-

employees and you will be responsible for the wages and fringes for these trucks.

You might consider contacting Local 716 to inquire if the lease (broker) trucks are signatory to Local 716, and if they are paid current and have dues receipts, which are <u>required to be in the trucks at all times!</u>

While all dump truck operators will be required to sign a contract, owner-operators must also furnish Local 716 a copy of their current registration with matching plate numbers along with a copy of their current Lease Agreement <u>that must be in the truck at all times</u>.  All trucks must be numbered and identified.  NO EXCEPTIONS.

All payments to the FUNDS are due on the 15th of each month.  Late fees will be applied and must be paid in full.  If you become 30 days late your contract will become null and void and you will have no receipt to work.  To be reinstated payment in full must be made including all late fees along with 3 months contributions in advance!  This policy includes Indiana Teamsters Health & Welfare payments.  If you are not curren with both funds you will be removed from the job.

If you have any question feel free to contact Local 716.  Your continued cooperation in this very serious matter will assure that you have an uninterrupted and prosperous season.

Thanking you in advance
Jim S. Cahill, President


After Cahill's memo was circulated, Plaintiffs Barrows and Sexton sought to pay their monthly union dues to obtain their customary receipt, but were denied.  Cahill informed each of the Plaintiffs that they would need to sign the CBA in order to work union jobsites and would need to contribute a full week's worth of fringe benefits for every week they worked regardless of the number of hours they actually worked during the week.  Plaintiff Brown signed the CBA, but Plaintiffs Barrows and Sexton refused.  Barrows and Sexton determined that they could not afford to pay full "weekly" fringe benefits regardless of hours worked and continue to remain profitable.

Subsequently, Barrows and Sexton were retained by subcontractors on union jobsites after reaching an agreement wherein the subcontractors consented to pay the fringe benefits on their behalf.  Regardless of that agreement, and regardless of Plaintiff Brown's compliance with the union's request that he become a signatory to the CBA, Cahill and other union and HHUD representatives visited the jobsites where Plaintiffs were attempting to work and, according to Plaintiffs, "individually and collectively conspired to and did" have them "thrown off" the jobsites, "threatening their personal safety and well-being and besmirching their character, reliability, and credibility to perform work for the subcontractors."  Plaintiffs claim that they have suffered health and financial consequences as a result of the Defendants' actions.

Plaintiffs, including other owner/operators who have since abandoned this cause, filed this lawsuit in March 2011 and included as Defendants all of the local union affiliates represented by the Joint Council as well as the contractors belonging to HHUD. After two amendments to the Complaint, only Barrows, Brown and Sexton remain as Plaintiffs, and the three remaining Defendants are Local 716, the Joint Council and Cahill.  The Second Amended Complaint asserts four theories of recovery against the Defendants: (1) tortious interference with a business relationship; (2) intentional infliction of emotional distress; (3) breach of the duty of fair representation; and (4) civil violation of Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186.

Before us now is a Motion to Dismiss (Dkt. #93) filed by all Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth in this entry, we GRANT the motion IN PART.

## II.  Standard for Rule 12(b)(6) Motion to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990).  In order to withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to plausibly state a cognizable claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868, (2009).  In evaluating the motion, the court accepts as true all well-pleaded factual allegations in the complaint, and any inferences reasonably drawn from those facts are construed in the light most favorable to the plaintiff.  *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir.1992).  Pursuant to the federal notice pleading standard, a complaint need only provide "a short and plain statement of the claim" showing that the plaintiff is entitled to relief and sufficient to provide the defendant with fair notice of the claim and its basis.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.2008). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that "state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level."  *Id*. at 545, 570.  As such, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft*, 556 U.S. at 1949 ( quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.  Discussion

Defendants contend that this entire dispute is rooted in federal labor law and that, even if their enforcement of certain provisions of the CBA adversely affects the Plaintiffs, Defendants  are entirely within their rights to require that contractors, subcontractors and owner/operators working on highway projects in their region conduct their operations in accordance with the terms of the agreement.  Our analysis of the Plaintiffs' Second Amended Complaint is hampered by its conspicuous lack of clarity.  It does not lend itself to easy deciphering of either the factual or legal assertions advanced there.  Plaintiffs appear to object to being deemed "employees" for some purposes and "independent contractors" for other purposes.  Plaintiffs also suggest that they should not be required to make fringe benefits contributions in order to work and, even if such a requirement is lawful, Plaintiffs contend they should not be required to pay a full week's worth of fringes when they work less than a week.

### PREEMPTION OF STATE TORT CLAIMS:

Plaintiffs invoke both Section 301 and Section 302 of the LMRA.  They rely on Section 301, 29 U.S.C. § 1985, as their basis for suing the Defendants, contending that, to the extent they are being defined as employees in the CBA and have paid their union dues

(until April 2010 when the payments were refused), the two unions breached their duty to Plaintiffs to provide them with fair representation.  "[A] union owes employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilot's Ass'n, Intern. v. O'Neill,* 499 U.S. 65, 75 (1991).

Section 302 of the LMRA forbids payments from employers to unions or union officials, with exceptions for appropriate payments to trusts such as those which unions and employers jointly oversee for employee welfare and benefits.  29 U.S.C. §1986(c). Plaintiffs claim that by requiring them, or the contractors who hire them, to make fringe benefit payments on their behalf, Defendants are in violation of Section 302, because Plaintiffs are not entitled to participate in the benefit programs and, therefore, do not derive any benefit from those payments.  They also claim that the amount of the fringe benefit payments being required bears no relationship to the hours they actually work, which they claim also violates Section 302.

To remedy these wrongs, Plaintiffs have also advanced state law claims alleging that Defendants have interfered with the business relationships which  Plaintiffs had with contractors by suddenly changing how Plaintiffs  were to be treated under the CBA.  They further contend that the Defendants' precipitous alteration of requirements regarding payment of fringe benefits was pursued with the intent to cause Plaintiffs severe emotional distress.  However, the federal labor law statutes, which Plaintiffs have sought to invoke preempt Plaintiffs' entitlement to state remedies.

-10-

In discussing the preemptive affect of the LMRA, the Supreme Court has articulated as a compelling interest the need to apply a single body of federal law where the "ordering and adjusting of competing interests" is required to keep the "industrial peace." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962). More recently, the Seventh Circuit has made clear that, when it comes to cases involving a union's implied duty of fair representation, complete federal preemption applies. *Nelson v. Stewart,* 422 F.3d 463, 470 (7th Cir. 2005). Indeed, the state tort claims which Plaintiffs seek to pursue here have specifically been held to be preempted by federal labor statutes. *Chicago Dist. Council of Carpenters Pension Fund* v. *Reinke Insulation Co.*, 464 F.3d 651, 657 (7th Cir. 2006)(citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236 (1959), tortious interference counterclaim brought by contractor being sued by union pension fund for delinquent benefit payments was found preempted by federal law); *Filippo v. Northern Indiana Public Service Corp., Inc.,* 141 F.3d 744 (7th Cir. 1998)(employee's intentional infliction of emotional distress claim against union was preempted by federal law because it required an analysis and interpretation of the language of the CBA).

Plaintiffs' Second Amended Complaint is replete with references to the CBA. In addition, their state tort claims challenge Defendants' tactics in negotiation and enforcement of the agreement as well as the union's ability to collect and reject both fringe benefit payments and dues. Indeed, the obligation to pay fringe benefits, to the

extent one exists, is the creation of the CBA.  Thus, clearly, consideration of these claims

necessarily requires interpretation of the CBA as well as recognition of mandatory

bargaining subjects and a determination of the union's rights and obligations under the

LMRA, all of which are central to federal labor statutes.  Any attempt to interfere with or

otherwise thwart the interests embodied by federal law is subject to preemption.  For

those reasons, Plaintiffs' two state tort counts must be and thus are hereby dismissed.

### *INDEPENDENT CONTRACTOR vs. EMPLOYEE*:

Plaintiffs advance alternative theories regarding their precise legal status: on the

one hand they claim to be independent contractors, but on the other hand they also claim,

by virtue of having have paid dues to the union, to be "employees," thereby entitling them

to fair representation by the union.  Count 3 of the Second Amended Complaint asserts

that the union Defendants owed Plaintiffs a duty of fair representation, which right

Defendants breached by barring Plaintiffs from "leasing their trucks out to work on

jobsites."  Defendants seek the dismissal of Count 3 based on Plaintiffs' admission that

they are independent contractors to whom no duty of fair representation is owed by the

union.  Plaintiffs, in response, contend that, while they believe they are independent

contractors, their payment of union dues entitles them to plead in the alternative that they

are employees to whom a duty of fair representation is owed.

The immediate question presented here is whether the acceptance of dues payments by the union creates a member relationship between the union and the Plaintiffs and gives rise to a corresponding duty to fairly represent them as owner/operators. Defendants for some reason have chosen not to address this question, nor have they addressed Plaintiffs' assertion that Count 3 is pled in the alternative.  Instead, in arguing for the dismissal of Count 3, Defendants rely entirely on the Plaintiffs' admission in their pleadings that they are independent contractors; if that is true, say Defendants, Plaintiffs are not employees under the LMRA and are not entitled to the benefits provided by that statute.

We agree in part with Defendants: if Plaintiffs are or have been independent contractors at all relevant times, they have no legal basis on which to assert a right to fair representation by the union.  However, Rule 8(d) of the Federal Rules of Civil Procedure clearly allows a plaintiff to assert as many separate or alternative claims as it desires, regardless of their consistency.  Furthermore, whether Plaintiffs are independent contractors or employees is not a question which can be definitely answered without a fully developed factual record.

In analyzing the amendment to the NLRA which added the exclusion of "individuals having the status as an independent contractor," 29 U.S.C. § 152(3), the Supreme Court stated: "The obvious purpose of this amendment was to have the Board and the courts apply general agency principles in distinguishing between employees and

independent contractors under the Act." *N.L.R.B. v. United Ins. Co. Of America,* 390 U.S. 254, 256 (1968).  Such an inquiry is a "fact-bound determination," which requires the court to examine the record for evidence of such things as the degree of control exerted by the contractor, how payment for services is determined, how permanent the relationship is and so forth.  *N.L.R.B. v. O'Hare-Midway Limousine Service, Inc.,* 924 F.2d 692, 694-95 (7th Cir. 1991).  Though our informed hunch suggests the likely answer to this question, we must rely on facts to buttress a definitive ruling and such a ruling cannot properly be made at the motion to dismiss stage.  Because it is pled in the alternative, Plaintiffs' theory of a breach of the duty of fair representation, as laid out in Count 3 survives, at least for now.  If, after discovery, it becomes clear  that Plaintiffs were in fact independent contractors at all relevant times, and not employees, dismissal (summary judgment) will necessarily follow.  Because the issue of employee or independent contractor is so central to a resolution of this part of the litigation, we encourage the parties to focus their immediate discovery on clarifying that matter.

### *VIOLATION OF LMRA SECTION 302, 29 U.S.C. § 186*

In Count 4 of the Second Amended Complaint, Plaintiffs claim that the payment of fringe benefits, as currently required by the union, violates 29 U.S.C. § 186.  Defendants rejoin that Plaintiffs have no standing to bring a civil action under 29 U.S.C. § 186, because they cannot demonstrate that any of Defendants' actions has caused them actual or imminent injury or that any injury for which they claim relief would be redressed by a

favorable decision from the court.  *See Arizona Christian School Tuition Organization v. Winn,* __ U.S. __, 131 S.Ct. 1436, 1442 (2011)(reaffirming standing requirements of: injury in fact; causal connection to conduct complained of; and likelihood that the injury will be redressed by a favorable decision).  In order to survive a facial challenge to standing based solely on the pleadings, as opposed to a challenge supported by a factual record, the complaint need set forth only general factual allegations of injury resulting from the defendants' conduct.  *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440. 443-44 (7th Cir. 2009).   It is true, as noted by Defendants, that there is no allegation contained in the Second Amended Complaint that Plaintiffs have actually made any payment of fringe benefits to the fund.  However, Plaintiffs have alleged that they have been told by the Defendants that in order to be allowed to work they, or any contractor who hires them, must pay a week's worth of fringe benefits, even if they log only a single hour of work.  As addressed below, if such an unfairness in the amount of the assessment has been perpetrated, there may well be an actionable harm and an entitlement to equitable relief.

Section 302 of the LMRA bars monetary payments by employers to unions or union officials, except for payments to qualified benefits trusts.  Standing to bring a civil action under Section 302 turns on whether the aggrieved party is an employee, employer or other party directly concerned with or affected by the payment, acceptance or administration of the funds at issue.  *See Hibernia Bank v. International Brotherhood of*

*Teamsters,* 411 F.Supp. 478, 484 (N.D. Cal. 1976).  Plaintiff Brown alleges that he signed the CBA as requested by the union and, as a signatory, he thus has standing as an employer.  Giving the remaining two Plaintiffs the benefit of all favorable inferences at this point, in the absence of any developed factual record, we conclude that it is possible, perhaps even plausible, that they could be deemed employees or at least fringe benefits paying parties who have been directly affected by the payment and administration of the funds.  However, it is important to note that Section 302 does not give rise to a private right of action for money damages under any factual construct; rather, equitable relief is the only available remedy.  *Bakerstown Container Corp. v. International Brotherhood of Teamsters,* 884 F.2d 105, 107-08 (3rd Cir. 1989).  If a structural violation of the payment exceptions provisions of  Section 302 of the LMRA, 29 U.S.C. § 186(e) can be established, the remedy available to a prevailing plaintiff is limited to an order to restrain such violations in the future.  *Johnson v. Botica*, 537 F.2d 930, 933 (7th Cir. 1976); *New York State Teamsters Conference Pension and Retirement Fund v. Hoh,* 554 F.Supp. 519, 528 (N.D.N.Y. 1982). Thus, should Plaintiffs prevail in this lawsuit, they are entitled to the issuance of a restraining order prohibiting further violations of 29 U.S.C. § 1986(e), but no monetary payment or award of damages based on lost business or profits is available under this statute.

A review of the relevant case law also indicates that Plaintiffs may not succeed simply on the basis of a blanket claim that their lack of participation as beneficiaries of

the pension or health benefits trusts bars payment of fringe benefits contributions to those trusts based on their work.  The circumstances presented to us in this case are closely analogous to those in *Walsh v. Schlecht,* 429 U.S. 401 (1977).  Walsh, a contractor/employer, was a signatory to a CBA with the local carpenters' union which required contractors to pay to a benefits trust fund fringe benefits contributions in the amount of 96 cents per hour worked by carpenter employees. *Id.* at 405.  The CBA required that subcontractors retained by signatory contractors either be bound by the fringe benefits provisions of the agreement or that the contractor keep track of the hours worked by subcontractor employees and assume liability for payment of the fringe benefits assessments. *Id.*  Walsh retained a non-signatory contractor and failed to keep track of the hours worked by its employees; instead, the subcontractor paid the $.96/hour assessment directly to its employees, along with the union wage scale, thereby compensating them in a total amount equal to what it would have paid had it been a signatory to the CBA.  The $.96/hour for fringe benefits was paid directly to the subcontractor's employees instead of to the trust fund as mandated by the CBA.  *Id.* at 405-06. The signatory contractor apparently concluded that the payment of the fringe benefits assessment directly to the non-union subcontractor's employees, particularly since those employees were not entitled to benefits from the union trust fund, excused his failure to track the subcontractor's employees work hours and make the required contributions into the trust fund. The trustees of the benefits trust fund sued the contractor

seeking an accounting of the hours worked by the subcontractor's employees and a

corresponding payment to the fund of $.96/hour for each hour worked. *Id.* at 406.

> The Supreme Court described the issue as follows:

> The parties agree that the determinative question for decision is that of the proper construction of the subcontractor's clause: whether that clause binds petitioner to make contributions to the trust funds "on behalf of" or "for the benefit of" the subcontractor's employees, so that they may participate in the benefits provided carpenters by the funds. Thus interpreted, the clause would violate § 302(a)(1) because the subcontractor is not a signatory to the collective-bargaining agreement and his employees are therefore ineligible for trust fund benefits based on carpentry work performed for him. On the other hand, if the clause merely obligates petitioner to pay contributions to the funds measured by the hours of carpentry work performed at the project by the subcontractor's employees, the benefits being payable only to carpenters employed by petitioner and other signatory employers, then the clause is authorized by the exceptions to the general prohibition of § 302(a) enacted in §§ 302(c)(5) and (6).

Id. at 407.  The Supreme Court then determined, based upon its interpretation of what it

described as an "inartfully worded" subcontractor clause, that the fringe benefit payments

were tied to the "measurement" of hours worked by the subcontractor and not whether the

payments were for their benefit, and thus no violation of Section 302 occurred.  *Id.* at 408-

410.

Subsequent to the Supreme Court decision in *Walsh*, the Seventh Circuit

encountered a similar scenario involving a factual variant to *Walsh*.  In *Mazzei v. Rock-N-

Around Trucking, Inc.*, 246 F.3d 956 (7th Cir. 2001), a trustee of a union welfare benefit

trust sued a trucking company claiming breach of a CBA obligation to contribute to the

fund on behalf of "owner-drivers" who worked for the contractor under equipment leases. *Id*. at 958. The trucking company was a signatory to the CBA, but most of its work was performed by owner-operators under lease agreements with the trucking company for whom no fringe benefit payments had been made to the fund covering the hours worked by the owner-drivers. The trucking company argued that it was not required to make such contributions, contending that: the CBA language was ambiguous; the owner-drivers signed waivers; and the owner-drivers were independent contractors not employees, thereby making such contributions illegal. *Id.*

A provision of the applicable CBA obligated signatory employers to pay the fringe benefits assessments into the trust "for an employee covered by this Agreement." *Id.* at 960. Another provision of the CBA stated: "Owner-Drivers operating their own vehicles and who are not certified carriers with proper Illinois Commerce Commission authority are covered within the terms and conditions of this Agreement, including Union security, hours, wages, overtime, Health & Welfare and Pension and working conditions." *Id.* at 961. The Seventh Circuit held that the CBA clearly purported to obligate the trucking company to pay these fringe benefits assessments on behalf of the owner-drivers. *Id.* However, the amount of the fringe benefit contributions required by the CBA were fixed weekly amounts, not amounts based upon the number of hours worked by the employer's workers, as had been approved in *Walsh. Id.* at 962. The Court went on to frame the issue as follows:

Because the contributions RNA is required to make under the terms of the CBA are "for each employee," and not like those upheld in Walsh, the employment status of RNA's owner-drivers will determine the legality of the contributions under the LMRA. As previously mentioned, employer payments to a trust for the exclusive benefit of that employer's employees are permissible under the LMRA. *963 29 U.S.C. § 186(c)(5). Thus, if RNA's owner-drivers are employees of RNA, the contributions would fall under this exception and be permissible under the LMRA. If the owner-drivers are independent contractors, however, because the LMRA "excludes any person having the status of independent contractor from the statutory definition of 'employee,' " *Mrowicki*, 44 F.3d at 460, then any RNA contribution to the Funds on behalf of the owner-drivers would violate section 302 of the LMRA. Thus, we must determine whether these owner-drivers are employees of RNA.

*Id*.

Applying agency principles, the Court in *Mazzei* determined that the owner-drivers

were independent contractors as opposed to employees.  *Id.* at 965.  Thus, it reasoned:

Given our determination that RNA's owner-drivers are independent contractors, the present case bares a striking similarity to the Ninth Circuit's decision in *Todd v. Benal Concrete Construction Co.*, 710 F.2d 581.  In *Benal*, the terms of a collective bargaining agreement explained that when individuals referred to as owner-operators performed work for Benal that was covered by the terms of the agreement, those individuals "shall become employees." *Id.* at 582. The practical effect of this language was that Benal would thereafter be obligated to contribute "on behalf of" these owner-operators to local union trust funds. Reviewing not only the language of the contract, but also the actual working relationship between Benal and the owner-operators, the court determined that the owner-operators were independent contractors.  Because the contributions Benal was obligated to make were not based on the hours worked by these non-employees, like the contributions upheld in *Walsh*, but instead were to be made "on behalf of" the owner-operators, the court concluded that *Benal* could not be required to make these contributions, as they would violate section 302 of the LMRA. *See id.* at 584.

*Id*.

What the *Walsh* and *Mazzei* decisions teach with regard to the circumstances in our case is that Plaintiffs' inability to participate as beneficiaries of the benefits trust does not foreclose the enforcement of an obligation in the CBA that a contribution be made based upon the hours they worked.  In addition, whether Plaintiffs are employees or independent contractors for purposes of § 302 must be determined based on agency principles, not the labels used by the parties or the CBA.  Thus, as with respect to the existence of any duty on the part of the union to fairly represent Plaintiffs, the issue of "employee or independent contractor" is germane in this context as well regarding the lawfulness of the fringe benefits assessments imposed on Plaintiffs.

Defendants maintain that they have no ability to influence whether Plaintiffs are hired by signatory employers or to force Plaintiffs to sign the CBA.  Thus, any injury complained of by Plaintiffs cannot be attributed to their actions.  However, Cahill's posting, a copy of which was attached to the Second Amended Complaint belies Defendants' assertion, clearly suggesting that both he personally and the union have the power to affect whether Plaintiffs are hired at all or whether they work on a particular jobsite.  In any event, Defendants' factual assertions in their brief are not apparent from a review of the CBA.  Like the issue of employee or independent contractor, we must reserve th another day issues of causation.  Accordingly, Count 4 for the present survives dismissal.[3]

---

[3]The court notes that the determination of the issue of "employee vs. independent contractor" may impact the issue of standing as well with regard to Count 4.  In *Toyota Landscaping Co., Inc. v.*

## IV.   Conclusion

For the reasons explicated in this entry, Defendants' Motion to Dismiss is

GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to Counts 1

and 2, because the state tort law claims laid out in Counts 1 and 2 of the Second Amended

Complaint cannot survive based on federal preemption principles.  The motion to dismiss

is DENIED as to Count 3, which ruling may require reconsideration at some point based

on the factual determination as to whether Plaintiffs were independent contractors or

employees at all times relevant to this case.  To the extent Count 4 seeks an award of

money damages, the motion is GRANTED and that part of the claim is dismissed because

equitable relief is the only available remedy for a violation of 29 U.S.C. § 186(e).

IT IS SO ORDERED.

Date:   09/05/2012

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

_Southern California Dist. Council of Laborers,_ 11 Fed.3d 114 (9th Cir. 1993), the Ninth Circuit found that the plaintiff, an independent contractor seeking an injunction based upon payment  language in a CBA which allegedly violated Section 302 of the LMRA, had no standing to sue because the interests it sought to protect as an independent contractor were not within the interests protected or regulated by Section 302.  This was not an argument with regard to standing that was made or briefed as part of the motion to dismiss before us, but it is an issue which could require attention and briefing later, depending on whether Plaintiffs are determined to have been independent contractors at all relevant times.

COPIES TO:

Matthew A. Bahl
VERRILL DANA LLP
mbahl@verrilldana.com

Edwin J. Broecker
TAFT STETTINIUS & HOLLISTER LLP
ebroecker@taftlaw.com

Stuart R. Buttrick
BAKER & DANIELS
stuart.buttrick@bakerd.com

Robert D. Cheesebourough
ruaneagle@aol.com

Neil E. Gath
FILLENWARTH DENNERLINE GROTH & TOWE LLP
ngath@fdgtlaborlaw.com

Geoffrey S. Lohman
FILLENWARTH DENNERLINE GROTH & TOWE LLP
glohman@fdgtlaborlaw.com

Ryan M. Martin
martinr@taftlaw.com

Samuel  Morris
GODWIN MORRIS LAURENZI & BLOOMFIELD P.C.
smorris@gmlblaw.com

John T. Neighbours
BAKER & DANIELS - Indianapolis
john.neighbours@faegrebd.com